### JONATHAN HUNN'S WILL.

Orphans' Court. Kent. In Vacation. February 15, 1823.

*Ridgely's Notebook IV, 110.*

[Letter of *W. Hall,* Counsel.]

Jonathan Hunn, by his last will and testament, dated 24th of 7th month 1820, and proved November 1, 1820, recites in substance:

That the testator had entered into a contract for securing to his wife the principal of certain money arising from the sale of part of her estate; that in 1810 he had made an arrangement complying substantially with his contract and had provided against any demand being made upon his estate under it; that after this the testator thought it adviseable to invest some money in ground-rents, mortgages etc. in Philadelphia, and suggested to his wife the propriety of doing so, and of leaving her money so invested in case of his death; that she approved this, and that the testator sent to Philadelphia $3500; of which sum $3000 was invested in a ground-rent of $200 *per annum,* believed to be amply secured; that this ground-rent was considered by the testator and his wife as intended to be hers, in case of his decease before her, if he should receive, of the money arising from the sale of part of her estate, during his life to the amount of $3000; he had not received to that amount when the ground-rent was purchased; but he afterward received other sums. And the total amount of all the sums received was $3319.49, to wit, to amount of said ground-rent and $319 over.

That afterwards the testator's wife died, and that he had been advised by counsel that upon her death he became discharged from all liability under the above mentioned contract; he then proceeds,

"Notwithstanding my being satisfied, as above stated, that I am released by the death of my wife from the obligation of returning anything in consequence of the above contract, legally speaking, yet in justice I am not, and feel disposed to mete [1] out the same measure I should, had my wife survived me; and as she left some memorandums in the form of a will, though of none effect in law they are of some with me, it having been my intention to make the same distribution of the ground-rent and three hundred and nineteen dollars that I have good reason to believe she would have done *viz,*" (specifies the manner) "this being the purport of her memorandums in the shape of a will as aforesaid; and in conformity with her views and wishes, I had in an arrangement of my estate a few months back proceeded to give and devise the aforesaid ground-rents," and the said $319 (specifying the manner) "as the whole amount of money received by me from the sale of part of my wife's real estate is but $3319.49, I considered the devise to" (specifying the above devise) "as complying with the demands of strict justice and proceeded to declare" (that devise should be void if any attempt to look to his estate under the contract).

"But a material change having taken place in our prospects relative to the before mentioned ground-rent, there appears a strong probability of difficulty in the recovery of the ground-rent and perhaps of considerable loss. I have therefore from this view of the matter thought it right to change my plan, which I now do, and proceed to give and devise to the said ———, in lieu of said ground-rent and three hundred and nineteen dollars, all the principal of a mortgage which I hold on ——— of two thousand dollars, and the sum of thirteen hundred and nineteen dollars to be raised from the before mentioned ground-rent, as hereinafter directed, that is to say, I give and devise to the said E. H. one-half of said mortgage and one-half of the thirteen hundred and nineteen dollars; to said A. M. I give

---

[1] Manuscript reads, "meet."

and devise one-fourth of said mortgage and one-fourth of the thirteen hundred and nineteen dollars as aforesaid, and to Samuel R., if he should attain the age of twenty-one years, I give and devise one-fourth of said mortgage and one-fourth of the thirteen hundred and nineteen dollars;  but if the said Samuel Rowland should die before he attains the age of twenty-one years as aforesaid, then and in that case the fourth part of said mortgage and thirteen hundred and nineteen dollars thus devised to him on condition of his arrival at lawful age I give and devise to the said A. M.; this being agreeably the written memorandum left by my wife in the form of a will as aforesaid, and it is my wish and desire that the part of said mortgage and thirteen hundred and nineteen dollars, which may go to my niece, Ann M., whether it be one-half or one-fourth should at some convenient time be realized for the benefit of said Ann and her children.  The mortgage alluded to bears date," etc.  "And as it is my belief that this mortgage is good and my intention that my estate should make it so, I now proceed to declare and do declare that if there should be any attempt made in any way to look to my estate other than by this devise, on account of the moneys arising from the sale of part of my wife's real estate, such attempt shall do away to all intents and purposes this foregoing devise to E. H., A. M. and S. R., and it shall become null," etc.

"Thirdly, I give and devise to Isaac W. Morris and Thomas Wistar of the City of Philadelphia and the survivor of them and the executors and administrators of such survivor, in trust, whatever sum my executors hereinafter named, with their assistance, may be able to raise or obtain over and above thirteen hundred and nineteen dollars from the sale of a certain ground-rent of two hundred dollars per annum in the City of Philadelphia or northern Liberties, being the same ground-rent before mentioned;  and if it should be thought best by the said Isaac W. Morris," etc. (Directions as to sale.) "And whatever sum may be raised by them either from the sale of ground-rent or from the recovery and sale of said lots and premises as aforesaid, after deducting thirteen hundred and nineteen dollars as aforesaid by my executor, the balance, whatsoever it may be, I direct to be paid over by my said executor to the said

Isaac W. Morris and Thomas Wistar," etc. (A very particular direction of a trust.) "The thirteen hundred and nineteen dollars to be retained out of the ground-rent, lot and premises before mentioned are appropriated by the foregoing devise to E. H., A. M. and S. R. as will, I trust, plainly appear by reference thereto."

The testator, by a postscript to his will, says, "I have endeavoured so to express throughout the foregoing, as that my intention may be gathered, which is what I want to govern and what ought."

The fee simple in the premises out of which the ground-rent issued has been recovered for non-payment of the ground-rent, and has been sold to satisfy the ground-rent and has produced a sum exceeding $1000, but not sufficient to satisfy the legacy of $1319 above given, by about $300. The question is, whether these legatees, E. H., A. M. and S. R. must bear the loss and receive only the net proceeds of the sale of the premises out of which the ground-rent issued, or whether they are entitled to receive from the administrator *de bonis non, cum testamento annexo,* of Jonathan Hunn the full amount of the legacy of $1319 bequeathed to them?

I have given to this will careful attention, and I have found much difficulty in forming an opinion upon the question proposed. The arguments on both sides of the question are plausible, and the authorities are nearly balanced.

On the one side, the testator declares that in justice he is not released from the contract to which he refers; that it is his intention to mete out the same measure that he should in case his wife had survived him (in which case the sum now given as a legacy could have been demanded as a debt under the contract); that he means to carry her memoranda, in substance a will disposing of the money arising under this contract, into execution; that to this end he had made a disposition of the ground-rent to these legatees, which he considered as complying with the demands of strict justice; that however the prospect since that disposition had changed in relation to this ground-rent, it appearing there would be difficulty in recovering the ground-rent and perhaps some loss experienced—and that from this view of the matter he had thought it right to change his plan; and he then proceeds to give, in lieu of the ground-rent and $319, the mortgage and the sum of $1319. This sum is *in numero* and is repeatedly mentioned in the disposition, and always as the sum of $1319.

On the other side, the testator very carefully notices that he suggested to his wife the propriety of investing money in ground-rent, and being her money so invested; that she approved this; that the ground-rent in question was always considered by the testator and his wife as intended to be hers. As to the mortgage he expressly says that his estate shall make it good, and that he looks upon it as good. As to the ground-rent where difficulty and probability of considerable loss is contemplated, he says nothing as to any liability upon his estate; he also provides that if his estate is looked to, under the contract, the bequest in the will shall be void. And the question arises, if the $1319 to be raised by sale of ground-rent was liable to no abatement in case of loss by the ground-rent, why so carefully declare that the investment was made with Mrs. Hunn's approbation, and the ground-rent considered as hers, or why provide against looking to his estate under the contract? Because if no abatement, the will would fully satisfy the contract in its most rigid terms. And further if his estate was to be at all events liable for $1319, why so much provision for raising it out of the ground-rent?

Perhaps, as a matter of conjecture, it may be considered proveable that the testator never contemplated that the ground-rent would not bring at least $1319; and therefore that the event which has happened, not being within his thoughts, was not the object of his intentions; and of course he not only has not made provision for this event, but that he had no intention about it; and the arguments, which I have above stated, seem to me more like reflections, which would have passed in his mind, if the event that has happened had occurred to him, in order to determine what provision should be made for this event, than as satisfactory reasoning to induce a belief or supposition that any provision was intended for it.

These points appear to me clear: 1. The testator did not consider himself, in justice, released from his contract by the decease of his wife in his lifetime, and he intended to execute it by his will fairly and conscientiously. 2. He did consider the circumstance, that the money was invested in the ground-rent with his wife's approbation and that the ground-rent was always intended to answer her claim under the contract, as an equitable and just ground for appropriating or attaching the ground-rent to the contract in the way of satisfaction. 3. He did not feel willing that the contract should be satisfied by the ground-rent, when the

difficulty and loss attending this ground-rent became apparent, and therefore he made the provision in the present will.

Whether he intended that the above equitable ground should in any event have any effect is, in my opinion, matter for conjecture as the will stands, not of correct legal argument to determine the just construction.

The question then comes to this point. Is the above legacy, according to the form of the bequest, a general legacy to the satisfaction of which the entire personal estate is subject? Or is it a specific legacy, to which a specific thing and that only, is answerable? Or in other words, does the bequest give the sum of $1319 *in numero,* or does it give an aliquot part of the ground-rent, of which $1319 is the measure?

The construction of the bequest will answer this question; and the justness of the answer will depend upon the correctness of the construction. The words which contain this bequest are as follows:

> "I have therefore from this view of the matter thought it right to change my plan, which I now do and proceed to give and devise to the said Elizabeth Howell, Ann Mifflin and in lieu of said ground-rent and three hundred and nineteen dollars, all the principal of a mortgage which I hold on the property of Samuel Thackard and wife in the City of Philadelphia on Southwark to the amount of two thousand dollars, on which the interest had been regularly paid, and the sum of thirteen hundred and nineteen dollars to be raised out of the before mentioned ground-rent as hereinafter directed."

The residue of this clause divides the subject of the bequest, and although the sum of $1319 is frequently repeated, the expression is definite, as "the thirteen hundred and nineteen dollars," evidently referring to the original bequest, and in no manner affects the general construction in relation to the proposed question. The next clause gives whatever sum can be obtained by the sale of the ground-rent over and above the $1319 and directs the sale, and requires the executor, after deducting the $1319, to pay over the balance upon certain trusts; and this clause concludes, "the thirteen hundred and nineteen dollars to be retained out of the ground-rent lot and premises before mentioned are appropriated by the foregoing devise to E. H., A. M. and

S. R. as will, I trust, plainly appear by reference thereto." This clause generally, (marked "Thirdly" in the will), is incorporated with the bequest in the preceding clause by the effect of the words "as hereinafter directed."

I consider that the substance of these clauses comes to this. One plan of the testator was to give the ground-rent as $3000 and money, the sum of $319, and thus to answer a demand of $3319, that he changes this plan and answers this demand by the following, to wit, a bequest of a mortgage, $2000, and the balance, $1319, to be raised out of the ground-rent; that the general effect is a disposition and appropriation of the ground-rent, an aliquot part to these legatees and the balance upon trust; and that the bequest is not a general bequest of $1319 to these legatees, to the satisfaction whereof the whole personal estate is liable, but that it is a specific bequest of an aliquot part of the ground-rent, of which $1319 is the measure.

It is therefore my opinion that the legatees must bear the loss and are entitled to receive no more than the net proceeds of the sale of the ground-rent premises.

What I principally rely upon is: First, the clause which gives the $1319 gives it, not generally, but "to be raised from the before mentioned ground-rent"; the bequest, in one entire sentence, being "the sum of $1319 to be raised from the before mentioned ground-rent." Second, taking all of the will relating to the subject together, it appears to me to amount to nothing more nor less than an appropriation and disposition of the ground-rent; and that the testator considered himself by the provision as disposing of and appropriating the ground-rent and doing nothing else. It is true that he evidently does this under an expectation which has been disappointed by the event. But it will not do, to make his will conform to a case which he did not contemplate, upon a conjecture, however plausible, of what he would have intended if he had foreseen what has taken place.

If there had been a deficiency to pay his legacies generally, and the ground-rent had sold for $3000 or more, no part of it could have been applied to supply the deficiency, nor would there have been any abatement of the $1319. This is certainly not conclusive, but it gives some aid to the general reasoning. Also, why so particularly direct as to raising the $1319 from the ground-rent, if the whole estate were liable?

The authorities in support of my opinion are 3 Bro.C.C. 431, *Badrick v. Stevens,* 2 Bro.C.C. 108, *Ashburner v. Mac-Guire.* This opinion is not satisfactory to me; but it is the best opinion which, after careful examination and repeatedly revolving the case in my mind, I can form. The case which has created my greatest difficulty is *Roberts v. Pocock,* 4 Ves.Jr. 150. In relation to this case however it may be said that the bequest was general. The direction to pay out of a particular fund was a subsequent and unconnected clause. The argument in the case turned upon this circumstance. What is said too of *Badrick v. Stevens,* "The testator meant to parcel out the bond among the legatees,"—has application to the case under consideration. The case in Vesey is put upon this point, "Whether a direction to the executors to pay out of a particular fund a legacy antecedently given purely and absolutely," shall convert it to a specific legacy. "In the case under consideration the legacy is given out of a particular fund," $1319, to be raised "from the before mentioned ground-rent as hereinafter directed," which is by sale. *Savile v. Blacket,* 1 P.Wms. 777, has also a bearing against the opinion which I have formed. This however is not so strong a case as that in 4 Ves. Jr. For the testator clearly intended to give the legacy; he mistook his power to charge it on land. This, however, should not defeat his intention, if there were other means to effectuate it.

Most of the cases in relation to specific legacies arise out of the question whether a legacy is adeemed. This question involves considerations totally distinct and of a nature entirely dissimilar from those belonging to the present case. Most of the cases are referred [to] in the note on 4 Ves.Jr. 748, in 750 and in note, 1 P.Wms. 539, *Hinton v. Pinke.*

I advise that as the sum in dispute is not large and the parties are desirous of an amicable settlement, that the opinion of the Chancellor be requested on this question. If his opinion shall coincide with mine, the money in hand can be paid and a receipt taken; if it shall differ, then an amicable suit may be entered and a decree also entered, which will exonerate the administrator *de bonis non,* whom I shall advise to pay according to the opinion which the Chancellor shall form.

*W. Hall.*

Dover. February 10, 1823.

The opinion of THE CHANCELLOR. I have considered the will of Jonathan Hunn, the arguments of Mr. Hall, and the cases cited by him, and I am of opinion that the bequest of $1319 to Elizabeth Howell, Ann Mifflin and Samuel Rowland gives pecuniary and not specific legacies. I have looked into all the cases on the subject, in addition to those mentioned, and there [is] none in which the legacy was adjudged to be specific, unless the specific thing, or an aliquot part of it was given.

Mr. Hunn gave a definite sum, and not an aliquot part of the ground-rents to these legatees. In *Ashburner v. MacGuire*, 2 Bro.C.C. 108, the bond was given. And in *Chaworth v. Beach*, 4 Ves.Jr. 555; *Innes v. Johns*, 4 Ves.Jr. 568; *Barton v. Cook*, 5 Ves.Jr. 461;—they were specific, because the very thing was given. This is a general legacy with a reference to the particular fund which seemed to the testator most convenient to him to pay it, and which it was most likely, under the particular circumstances, he would appropriate to this purpose, as far as it would go, especially too when he had ascertained that its amount was precarious. In *Raymond v. Broadbelt*, 5 Ves.Jr. 199, the Lord Chancellor said, "There is a general legacy but attended with the qualifications of a specific legacy, yet, with an appropriation upon part of the property. That was the ground I went upon in *Roberts v. Pocock*, and that is the case here." *Roberts v. Pocock* is strictly in point. I refer to *Simmons v. Vallance*, 4 Bro.C.C. 345; *Sibbly v. Perry*, 7 Ves.Jr. 524; *Webster v. Hale*, 8 Ves.Jr. 410; *Deane v. Test*, 9 Ves.Jr. 146; *Gillaume v. Adderly*, 15 Ves.Jr. 334; *Smith v. Fitzgerald*, 3 Ves. & Bea. 2,—as shedding much light on this subject. The case in Vesey and Beames is very satisfactory. There legacies were given in precise sums, not equal to the debt "out" of which they were to be raised. The legatees claimed the whole as specific; and, although the testator conceived that the legacies would exhaust or nearly exhaust the whole debt, according to his computation of the amount, it was adjudged that they were entitled to nothing more than the sums of money bequeathed, as the debt was not given, but only constituted a fund out of which the legacies were to be paid.

It seems to me, from the whole context of the will, that Mr. Hunn intended an actual *bona fide* repayment or return of the $3319. This he says he had provided for in the year 1810, so as substantially to comply with the Article of 1800. And as he was bound in justice to do so, and felt disposed to mete out the same measure that he should had his wife survived him, after her death, he made an arrangement by will, and gave and devised the ground-rent and $319 in the manner mentioned in her will;

and that he considered as a compliance with the demands of strict justice. All this while the security of the ground-rent was not doubted, or it could not have been in his estimation a compliance with the demands of strict justice. Then he devised the ground-rent itself; but having discovered that a material change had taken place by its insecurity, he changed his plan and, in lieu of the ground-rent and $319, he devised a mortgage of $2000 which he deemed perfectly safe, and $1319 to be raised out of the ground-rent. He would not have substituted the mortgage and $1319, without intending to secure these legacies; and when he declares that he changes his plan and bequeathes the mortgage and $1319 in lieu of the ground-rent, I cannot conceive how the ground-rent, or any part of it, can be specifically retained. It was not a partial change that he intended. He intended to appropriate a certain and sure fund to the payment of money which he held himself bound in justice to return.

He probably expected that the ground-rent was sufficient for the $1319, and for more, but he has expressed no opinion of that sort; and a conjecture should not avail against so many express declarations of his intention to pay the whole sum of $3319, and against the repeated bequests of $1319. We see the *prima facie* intention of the testator, and that should not be overruled but by some clear and explicit expression of a contrary intention. And there is none such.

In every provision which he made for returning the money received from his wife's estate, as well before her death as after, he guarded against the claim under the Article, because he did not intend to make a double satisfaction, one by his will, and another by the Article, for the same money; and because he deemed his arrangement, whenever made, and whatever it was, sufficiently a satisfaction of the Article. It was done from an abundance of caution, and I can discover no other intention by it than to confine the parties to the will, for satisfaction. He had done so before the investment of money in the mortgage and in the ground-rent, and it indicates no other design than such as I have mentioned.